Good morning, Your Honors. My name is Michael Bond. I represent the appellant, Ralph Cutter. I have the world's worst toothache, and so I apologize if my diction is a little unclear this morning. So far, we can hear you. Thank you. There are two reasons why we believe this Court should reverse the District Court's grant of summary judgment. The first is that the only basis for a claim of relief is under the ERISA provision for other appropriate equitable relief. The cases make it clear that that form of relief is permitted only where the plaintiff can trace specifically identifiable assets into the possession of the defendant. And under our undisputed facts, that does not exist in this case. There was no proper claim for equitable relief because Mr. Cutter never did have and does not have those funds in his possession that they are seeking. For that reason alone, the Court can affirm, should reverse the summary judgment entered in favor of Northwest administrators, reverse the summary judgment against my client, and enter summary judgment in my client's favor. Now, what about the fact that he wrongfully, and there was some showing of this, got the Northwest administrators, I guess it is, to pay these $70,000 in medical expenses to this lady to whom he was not married, and yet he represented she was the wife and got him to pay that money? Didn't he act, if he did act wrongfully in doing this and causing this payment, would not that be a basis for the equitable relief? No, Your Honor, it would not. And it would specifically not be a basis for relief because the Supreme Court said it was not a specific basis for relief, and that rule has been affirmed in both the Knudson case and the Sereboff case. They first ruled that wrongfully obtaining funds was not adequate to form a basis for relief in the Mertens case, where they were asked to declare whether or not somebody who, in the breach of their fiduciary duties, had arranged for the transfer of funds. Because the defendant did not have in its possession those funds, the Supreme Court did not allow that relief to proceed. That was the reason for the ruling in the Knudson case and the Sereboff case. The reason for the ruling in the Great West Life, which came out of this circuit, versus Knudson, was that the defendant did not have control of or access to or possession of the funds at issue. In that case, there was a contractual right of reimbursement. The party had signed a contract indicating they were willing to return the funds after the third-party settlement was made. Okay, but why can't we rely on statements from the Carpenter's case that Great West did not overrule Ninth Circuit's rule regarding restitution involving fraud, wrongdoing, and ill-gotten gains? Because you need to look at the entire facts of those cases where the defendant against whom a claim was being made was the recipient, the transferee, the receiver of those funds. In every one of those cases, the defendant received the funds. That is the distinguishing characteristic. But we clearly have a situation of fraud here based on the finding of what's going on because the court found that it wasn't – they didn't hold themselves out as being married. They were not legally married, that they knew that. And you've got – there's a comment in Saraboff's that Great West was describing the conditions for equitable restitution generally and was not attempting to catalog all instances where equitable restitution would be available. Every one of the cases that permits a recovery were cases in which the defendant had possession of the funds. It is in the nature of an equitable remedy, not in the nature of a damages remedy. That is the distinguishing factor here. But to more specifically answer your question, Your Honor, the question, why shouldn't we hold the defendant to his fraud, begs the question, which is, does – should there be any value given to the decision in the probate court? If there is to be given any value to the decision given in the probate court, then yes. Then I would say they win, we lose. But the issues in the probate court was this. Was there a marriage sufficient to permit a community property interest? That was the only issue. That is not the issue under the insurance contract here. The insurance contract here did not define the terms marriage or spouse. But in the probate issue, the court said that there wasn't a marriage and there wasn't a, what, meretricious relationship? Is that the word that they use? Right. All right. And, you know, obviously the whole issue in the case, obviously if they had been married, then he clearly had a community property interest. If he could establish a meretricious relationship, then he might be able to, and he was unable to establish either. And the whole centerpiece of the trial was the nature of the relationship, and everything fell against him, and he had every motivation in that. He was a party to had he been able to establish he was legally married or that he had some relationship that would allow him some community property rights. You know, what was left out there? The religious marriage that he did, in fact, engage in. A religious marriage that the probate court found occurred, that there was, in fact, a religious marriage. And that should be dispositive for these purposes. And the reason it should be dispositive is because the plan document is an insurance contract. The black letter law in every state in this country is that the undefined terms of an insurance contract receive their ordinary dictionary definitions. The ordinary dictionary definition of spouse or married includes legal or religious ceremony consummating a marriage. It is undisputed that they had a religious ceremony consummating this marriage. That dictionary definition makes the term ambiguous, and under the law of every state in this country, an ambiguous term is to be construed in favor of the policyholder, in this case, Mr. Cutter. They had a religious marriage. The probate court found they had a religious marriage, but she declared it was not a legal marriage because in Washington she said you need to have a marriage license. Whether it was a meretricious relationship or not is irrelevant because their policy doesn't permit coverage, doesn't grant coverage to dependents in meretricious relationships either. Under the Northwest Administrator's position, if you don't have a marriage license and a marriage ceremony, you're not married, we don't care what else happens. Nowhere do they set that out in their policy language. It is simply not fair for the health insurer to deprive somebody of coverage, to come back and take the money back from somebody who never got the money 20 years after the event with an undefined term in their policy. And that's the second reason why we think the court should reverse the summary judgment, because the undisputed fact is there was a religious marriage in which they were married before the eyes of God. That is undisputed. It is also undisputed that this contract, this insurance contract, does not define those terms. And under the law in this jurisdiction, in this country, if you do not define your terms, then the benefit goes to the person who receives the benefits. And that's what happened here. Well, between themselves, obviously it would appear that there was evidence in the record that initially when there was discussion of marriage, your client wanted her to sign a prenup, which she would not do, so they didn't get married. And she would never sign a prenup, and so then they just did this religious thing. So there was clearly evidence that they knew it was of a different degree, or, you know, why would your client have asked for a prenup? And probably all would have gone well, but for the fact that when she passed away, your client decided that he wanted half of the property, and her children didn't want him to have it. And so. Right, property that he had paid for. Property that came from his funds, and that's undisputed also. Well, I don't know that that could be undisputed. If it had come from his funds, it would seem to me that he would have gotten something back in the probate court. Well, but the judge declared there was no community property interest, and therefore he got zero. Okay. Do you want to save some for rebuttal? I'll save one minute. Yes, thank you. Okay. Meeting please. I'm Tom Leahy, and I represent Northwest Administrators. Northwest Administrators is a third-party administrator for the Teamsters Welfare, Washington Teamsters Welfare Trust and the Retirees Welfare Trust. These two trust funds provide benefits for eligible employees, eligible retirees, and eligible family members. Northwest is respectfully requesting that the court affirm the trial court decision that ordered Mr. Cutter to pay over $70,000 in restitution for wrongfully paid out medical benefits. Northwest paid out these medical benefits on behalf of Rosalie Devereaux after Mr. Cutter told the trust funds that he was married to her. Well, how do you reconcile our fraud-based restitution cases with the court's emphasis in Great West on the defendant's possession of the funds? In Great West, that was a contractual reimbursement case, and so in that case the court was saying, look, in order to get an order under 1132A3, in order that there be equity, you have to specifically identify the funds when you're dealing with a contractual reimbursement claim. In Great West, there were no trust funds, there was no money from the party wrongfully taken from the trust fund or wrongfully taken from the party. So that makes that case different from our case where trust assets were wrongfully taken or wrongfully directed from the trust fund. So Great West and CERBOF deal with contractual reimbursement claims, and for contractual reimbursement claims in equity, you need to identify the specific fund. But we don't have that here. We have funds that were wrongfully taken, and therefore they don't need to be specifically identified. And that makes sense, because if funds are wrongfully taken or wrongfully diverted, they're going to be hard to track down. Who knows what's going to happen to them after they're wrongfully diverted. That's different from a contractual reimbursement claim. I guess I wonder what makes that kind of a case one that would go to equity back in the days when equity and law were separated. You've got a fraud, and some money is taken and spent or disappears. How does a chancellor get that back? Well, I think generally in the times of divided events, when you're talking about trust assets, and you're talking about restoring trust assets, that generally is going to fall under equity. And when you're talking about a fraud or wrongdoing, removing trust assets, equity, you know, when there's no adequate remedy at law or no adequate remedy under contract, equity as a matter of justice is going to hold the person responsible that is the person that caused the trust and then just order repayment, I suppose. Yes, and we're only seeking to make the trust fund whole again. We're not seeking punitive damages. We're just trying to, I guess as we say in labor law, return to the status quo and make the trust fund whole again for the trust assets that were wrongfully taken out. And mind you, the whole purpose behind ERISA was to protect trust assets so trust funds would be adequately funded to provide medical benefits or pension benefits for eligible members. That's the whole purpose behind ERISA. So now for Mr. Cutter to say that ERISA doesn't allow this type of recovery turns ERISA on its head. The whole purpose behind ERISA is to protect trust assets, and the trust fund has a fiduciary duty to make sure the trust assets are properly spent. And once the trust funds find out that the money wasn't properly spent, if they don't try to go out and seek that money, they could potentially be seen as violating their fiduciary duty, and then there could be a potential cause of action against them. So here the trust funds are just carrying out their fiduciary duty in protecting trust assets. I want to address the argument that the contract doesn't define spouse, so why doesn't this qualify? Well, I think when you get into contract interpretation and you're dealing with a trust agreement, first of all, because you're talking about a trust fund agreement, the trustees are going to get great deference in how they interpret a trust fund document like a plan document. Secondly, before you get to... Does the instrument give them discretion to interpret? Yes, I believe so. It gives them broad discretion to interpret and apply their agreement.  Before you even need to open up a dictionary or look at case law, just look at the common understanding of a term, and the common understanding of married, spouse, is somebody that you're legally married to. There's no case law cited where it's anything different. It's a common understanding in our society. And to force the plan to try to define every term out there would basically make a plan unreadable. I mean, to have to put legal in front of spouse or legal in front of social security number or legal in front of your address, I mean, that would just make a plan unable to read. And so when you look at a plan and you're looking at the terms, the first thing you do is look at this ordinary definition that's commonly understood in society. Well, if you assume that it was ambiguous, just if you go there, would it matter the evidence in the record that seems to indicate between these parties that when they were talking about getting legally married that, you know, there was evidence in the record that she wouldn't sign a prenup and then all of that. So would that be relevant evidence to say what his understanding was of what that meant? Well, I think that shows that Mr. Cutter understood the significance of legal marriage and understood the significance of terms such as married and spouse. Well, he made the ‑‑ I think the appellant's argument was that it was ambiguous and therefore anything that's ambiguous inures to the benefit of the, you know, not to the insurance company but to the insured. Yeah, and we disagree with that contention. We think the trust fund gets great deference in interpreting the terms. But you're saying it's not ambiguous anyway. Yeah, I mean, yeah. Our initial argument is, look, the terms married, spouse, they're not ambiguous. He had no problem filling out his income tax and saying he was single or not married. In fact, his income tax even listed Ms. Devereaux as other. So he understood the terms, what they meant. He understood the legal significance of marriage. I think that's clear in the record. He had been married three times before he met Ms. Devereaux, so he clearly knew the implications of what it means to be married, what it means to be a spouse. Are you an insurer? We're a trust fund, which I think operates under a little bit different than a typical insurer, so I'm not sure I understand your question. No, that's the question. I mean, he's relying in part on the rule that we construe an insurance policy against the insurer. Yeah. I wonder if you've got a policy here. You've got some sort of a health insurance benefit. Yes, but I think when you – I don't know if that's a contract. It probably is when you contribute some funds or something for it or it's a fringe benefit. But Mr. Cutter is a third-party beneficiary. The contract is actually between – would be between the employers and the trust fund. So he does not have a contract with the trust fund, and therefore there is a special case law that's cited in the briefing. Watson – I think Frozen Creamery versus Watson-Biller cites to the special deference given to trust funds. I don't think we have any additional questions. No further questions. Northwest respects the request that the Court of Appeals affirm the trial court decision. And that's all I have for today. Thank you. We are arguing. To answer Judge Canvey's question, if it walks like a duck and acts like a duck, it's a duck. Judge Cunar had no difficulty calling this an insurance policy. He did in his district court decision. It has all the features of an insurance policy and should be treated like an insurance policy. My client paid premiums for this coverage. The Carpenter's health decision at 384 Fed 3rd, page 672, says that restitution under this provision of ERISA is available, but only if, number one, it is true equitable remedies, and, number two, fraud or wrongdoing is shown. So it's a two-part test, not just was there fraud, but is this also the classic equitable remedies as discussed by Justice Scalia in the Great West decision that started this whole analysis. You have to have possession of the funds in order to qualify for ERISA restitution. That didn't happen here. If Your Honors agree with our position, then I also ask that you remand this to the trial court for a hearing on our right to attorney's fees. Thank you. All right. This matter will stand submitted. Thank you both for your argument.
judges: Canby, Thompson, Callahan